# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SHANICA RUTLEDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:22-cv-01062 |
| HIRE DYNAMICS and UNCOMMON ) | Judge Aleta A. Trauger |
| JAMES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

Hire Dynamics, LLC ("HD") has filed a Motion to Dismiss and Compel Arbitration or, in the Alternative, to Stay and Compel Arbitration (Doc. No. 22). Uncommon James, LLC ("UJ") has filed a separate Motion to Compel Arbitration (Doc. No. 24). Shanika Rutledge has filed a consolidated Response (Doc. No. 29), and each defendant has filed a Reply (Doc. Nos. 32, 33). For the reasons set out herein, the motions will be granted.

## I. BACKGROUND

HD is a staffing company, and UJ is an HD client. Rutledge is a worker who was placed at UJ by HD. On December 27, 2022, Rutledge filed a Complaint against the two companies alleging sexual harassment, race discrimination, and retaliation in connection with her time at UJ. (Doc. No. 1.) The defendants filed separate motions seeking to compel arbitration. (Doc. Nos. 22, 24.) Each motion relies on the same Talent Work Agreement between Rutledge and HD,[1] which includes the following arbitration provision:

---

[1] Although UJ was not a signatory to the agreement, it is well-established that arbitration agreements may grant rights to third parties consistently with "the relevant state's common law." *AtriCure, Inc. v. Meng*, 12 F.4th 516, 524 (6th Cir. 2021) (collecting cases). Tennessee law recognizes such rights of third parties "where (1) the parties to the contract have not otherwise agreed, (2) recognition of the third-party's right

> In consideration for my employment with Hire Dynamics, LLC, I hereby agree to resolve any and all disputes or claims related in any manner whatsoever to my work with Hire Dynamics, LLC, including, but not limited to, any claims against Hire Dynamics, its clients, officers, shareholders, employees, or agents, by binding arbitration.
>
> Disputes or claims covered by this agreement **do not include** any disputes excluded from this agreement to arbitrate by Law, including but not limited to, workers compensation disputes, administrative charges filed with the Equal Employment Opportunity Commission (EEOC), and unemployment benefits claims.
>
> Disputes or claims covered by this agreement **do include** disputes or claims which would otherwise be filed in court and are based upon federal or state statutes, including, but not limited to, Title VII of the Civil Rights Act or 1964, as amended, and any other civil rights statute, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Fair Labor Standards Act or other wage statutes, the WARN Act, claims based upon tort or contract laws, or any other federal or state law affecting employment in any manner whatsoever. . . .
>
> l agree that arbitration pursuant to this agreement to arbitrate shall be in accordance with the applicable rules of the American Arbitration Association ("AAA").

(Doc. No. 23-1 at 6–7.) According to the printout of the agreement provided by HD, Rutledge electronically signed the agreement and electronically initialed each paragraph. (*Id.*)

The defendants have also provided a Declaration of HD Market Manager Ryan Roark, in which he states:

> 3. I have personal knowledge of the facts set forth in this Declaration, or I have knowledge of such facts based on my review and knowledge of the business records and file of Hire Dynamics, and could testify to the same if called as a witness in this matter. . . .
>
> 5. Plaintiff Shanika Rutledge was hired by Hire Dynamics on November 5, 2021.
>
> 6. As part of Hire Dynamics' onboarding and application process, Hire Dynamics employees are required to authorize the use of electronic signatures instead of ink signatures.

---

to performance is appropriate to effectuate the parties' intent, and (3) terms or circumstances indicate that performance of the promise is intended or will satisfy an obligation owed by the promisee to the third party." *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 618 (Tenn. 2004) (citation omitted).

> 7. . . . . [The attached contract] is a record of Rutledge's Agreement and was made and is kept in the regular practice of Hire Dynamics' business activities. Per Hire Dynamics' standard process, Rutledge electronically signed the Agreement by entering a unique and secret password and authorizing her electronic signature on the document.

(Doc. No. 23-1 at 1–2.)

In Rutledge's Response, she asserts that "there are disputed issues of material fact as to whether there is an enforceable agreement to arbitrate" and asks that the court conduct a trial on the issue of arbitrability. (Doc. No. 29 at 6.) Rutledge has provided a Declaration stating:

> During my on boarding with Hire Dynamics I was asked to sign a number of documents, however, I never knew that I had sign papers or an agreement to give up my right to a jury trial. I do not recall ever seeing or signing an Arbitration Agreement and no one ever explained to me that I was signing away my right to a jury trial. I never received the time to review the documents I was told to sign the documents; my mouth was swabbed, and I was given a card and told where to report to work the next morning.[2]

(Doc. No. 29 at 14.). The defendants argue that the arbitration agreement is enforceable, but they also argue that the initial determination of its enforceability should be made by the arbitrator.

## II. LEGAL STANDARD

The question of whether Rutledge's claims must be arbitrated is governed by the Federal Arbitration Act ("FAA"). The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a "strong presumption" in favor of arbitration under the FAA. *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 393 (6th Cir. 2014). "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Where a litigant establishes the existence of a valid agreement to

---
[2] The court has reproduced this statement verbatim to avoid substituting the court's interpretation of ambiguous language for the text itself.

arbitrate the dispute at issue, the court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, (citing 9 U.S.C. §§ 3–4).

### III. ANALYSIS

Typically, a court considering whether to enforce an arbitration agreement must first determine whether such an agreement actually exists. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In doing so, the court applies the applicable state law pertaining to contract formation. *De Angelis v. Icon Entm't Grp. Inc.*, 364 F. Supp. 3d 787, 792 (S.D. Ohio 2019) (citations omitted). If the court finds that such an agreement appears to have been actually formed, the party opposing arbitration may put forth "generally applicable state-law contract defenses" to the validity or enforceability of the contract, including, but not limited to, such defenses as "fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

The court must address those defenses, "absent a valid provision specifically committing such disputes"—sometimes referred to as involving "threshold" or "gateway" issues of arbitrability—"to an arbitrator." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010). The same is true with regard to the initial construction of the arbitration agreement, which similarly presents threshold issues that may be—but should not be assumed to be—delegated to arbitration. *See Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 843 (6th Cir. 2021) Whether a particular provision delegates threshold issues to the arbitrator presents a distinct issue, separate from the arbitrability of the underlying claims. *See Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) ("A delegation provision is 'an

[antecedent] agreement to arbitrate threshold issues concerning the arbitration agreement.'") (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

The standard for establishing a delegation of threshold issues has typically been considered more demanding than the standard for establishing the arbitrability of the underlying claims. The Sixth Circuit has stated that, when the question at hand is substantive arbitrability of a claim, "[a]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714. In contrast, when a court considers whether threshold issues have been delegated, it must look to whether that delegation has been "clearly and unmistakably" expressed. *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

On first reading, it might not appear that this arbitration clause delegates threshold issues of arbitrability to the arbitrator. Under the law of this circuit, however, "clearly and unmistakably" does not necessarily mean "obviously." The Sixth Circuit—following the lead of a number of other federal circuit courts—has held that, generally speaking, "the incorporation of the AAA Rules" into an arbitration clause "provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability,'" because the AAA Rules treat such issues as subject to arbitration. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases). That does not necessarily mean that every reference to the AAA Rules in an arbitration clause amounts to such a delegation; each contract must be construed pursuant to its own terms, and it would undoubtedly be possible to draft an agreement stating that the AAA Rules apply generally but that the courts retain the power to decide threshold issues. Nothing about the language in this agreement, however, suggests that that is the case here. Rather, the

5

agreement simply adopts AAA Rules in largely the same manner that has been repeatedly held to amount to a valid delegation of threshold issues.

The issue before the court is, therefore, narrow. The court is not called on to determine whether the alleged arbitration agreement is enforceable or whether it encompasses Rutledge's claims, because the relevant provisions delegate those issues to the arbitrator. Rather, the court's focus is solely on the narrow question of "[i]f an agreement exists." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 880 (6th Cir. 2021). Hastily completed onboarding paperwork can give rise to real disputes in this regard. *See, e.g.*, *Bazemore v. Papa John's U.S.A., Inc.*, No. 22-6133, 2023 WL 4631540, at *2 (6th Cir. July 20, 2023) (finding disputed issue of fact regarding whether employee signed agreement). Rutledge, however, has not established an actual dispute of fact regarding whether such an agreement was, as a threshold matter, formed here. Rutledge raises issues regarding her receipt and knowledge of the paperwork that might be relevant to the issue of enforceability,[3] but all of the evidence before the court suggests that Rutledge did, in fact, sign and initial the relevant provisions through HD's electronic system. Because such an agreement would meet the ordinary requirements for establishing the *prima facie* formation of a contract, *see St. George Holdings LLC v. Hutcherson*, 632 S.W.3d 515, 526 (Tenn. Ct. App. 2020), all remaining issues must be decided, in the first instance, by the arbitrator.

The FAA instructs that, "upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration," the court "shall on application of one of the parties stay

---

[3] In particular, Rutledge's arguments implicate the growing body of caselaw and research regarding the enforceability of "electronic contracts of adhesion." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 402 (E.D.N.Y. 2015); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); Erin Canino, *The Electronic "Sign-in-Wrap" Contract: Issues of Notice and Assent, the Average Internet User Standard, and Unconscionability*, 50 U.C. Davis L. Rev. 535, 537 (2016); Donnie L. Kidd, Jr. & William H. Daughtrey, Jr., *Adapting Contract Law to Accommodate Electronic Contracts: Overview and Suggestions*, 26 Rutgers Computer & Tech. L.J. 215, 219 (2000).

6

the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Rutledge, however, has made no request that the matter be stayed, and the defendants have asked that it be dismissed. Under the law of this circuit, a dismissal of claims without prejudice is permitted in connection with referral to arbitration in such a situation. *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017). The court, seeing no equitable or practical reason to retain jurisdiction over the case, will dismiss Rutledge's claims without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss and Compel Arbitration or, in the Alternative, to Stay and Compel Arbitration (Doc. No. 19) is hereby **GRANTED**. All claims are **REFERRED** to arbitration and this case is **DISMISSED** without prejudice.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge